IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHAROLYN RODRIGUES-WONG AND CHRISTOPER FONTANILLA, | ) ) ) | CIVIL NO. 08-00520 LEK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CITY & COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT; JOHN DOES 1-20; DOE ENTITIES 1-10, | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AGAINST CHRISTOPHER FONTANILLA**

Before the Court is Defendant City and County of Honolulu, Honolulu Police Department's ("Defendant" or "HPD") Motion for Summary Judgment Against Christopher Fontanilla, filed on April 22, 2009 ("Motion"). Plaintiff Christopher Fontanilla ("Plaintiff Fontanilla") filed his memorandum in opposition on May 14, 2009. Defendant filed its reply on May 21, 2009. This matter came on for hearing on June 1, 2009. Appearing on behalf of Defendant was Tracy Fukui, Esq., and appearing on behalf of Plaintiff Fontanilla was Venetia Carpenter-Asui, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Defendant's Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiff Sharolyn Rodrigues-Wong ("Plaintiff Wong") and Plaintiff Fontanilla ("Plaintiff Fontanilla", and collectively, "Plaintiffs") filed their Complaint in the instant action on November 19, 2008.[1]  The Complaint alleges a state and federal retaliation claim and an intentional infliction of emotional distress ("IIED") claim on behalf of both Plaintiffs, and a state and federal gender discrimination claim on behalf of Plaintiff Wong.  The Complaint alleges that, or about August 2003, Corporal Albert Mendoza began sexually harassing Plaintiff Wong in the HPD Kalani office, in public, and during line-up at the Kalihi Police Station, and out in the field.  Corporal Mendoza allegedly harassed Plaintiff Wong each day they worked together.  She objected to the harassment and tried to ignore it.  She initially did not file a complaint because she feared retaliation by Corporal Mendoza, her superior officer, and being ostracized by other male officers.  Corporal Mendoza also allegedly harassed female Police Officer Christine Thomas and other female officers.  On or about August 2003, Thomas made a sexual harassment complaint against Corporal Mendoza to Sergeant J. Averil Pedro.  [Complaint at ¶¶ 8-12.]

---

[1] Plaintiffs and others originally filed this action on February 13, 2006.  The case was trifurcated on November 3, 2008.

On or about October 13, 2004, Plaintiff Wong reported Corporal Mendoza's sexual harassment and retaliation.  [Id. at ¶ 15.]  Plaintiffs allege that, as a result of this report of sexual harassment and retaliation, Defendant engaged in a myriad of retaliatory acts against Plaintiff Wong, beginning on October 26, 2004.  [Id. at ¶ 16.]

As to Plaintiff Fontanilla, Plaintiffs allege that he witnessed Corporal Mendoza sexually harassing Plaintiff Wong. They allege he also witnessed other male officers sexually harass her after seeing Corporal Mendoza doing so.  Plaintiff Fontanilla heard the rumors that Corporal Mendoza spread about Plaintiff Wong and saw that other officers refused to cover her during dangerous work situations.  On October 13, 2004, Plaintiff Fontanilla reported the harassment of Plaintiff Wong to Lieutenant Lester Hite.  Plaintiffs allege that Plaintiff Fontanilla suffered a variety of retaliatory acts because he reported the harassment of Plaintiff Wong.  [Id. at ¶¶ 18-21.]

The Complaint alleges that Plaintiffs filed several complaints to the Equal Employment Opportunities Commission ("EEOC").  They received right to sue letters and filed timely lawsuits.  [Id. at ¶ 22.]

The Complaint alleges that Plaintiff Fontanilla suffered the following retaliatory acts as a result of reporting the sexual harassment of Plaintiff Wong:

3

-10/24/04, interrogation by Internal Affairs ("IA") detectives regarding whether he recognized a voice on tape as Plaintiff Wong's and whether he was romantically involved with her;
-10/04, sexual harassment complaint against him and Plaintiff Wong brought by the officers who harassed her;
-11/04, transfer to Alternative Call Services ("ACS"), a clerical desk job;
-1/05, interrogation in the sexual harassment case against him;
-6/05, ARB hearing regarding sexual harassment allegations;
-12/15/05, testifying on Plaintiff Wong's behalf at her second ARB hearing;
-1/8/06, HPD failed to investigate his complaint against an IA detective for tampering with evidence tapes;
-2/28/06, written reprimand in the sexual harassment complaint, even though it acknowledged that the City's EEO officer determined there was insufficient evidence to substantiate the claim;
-4/20/07, false IA investigation against him, removal of his police powers, and transfer to a desk job based on a false assault case;
-11/06, relocating him to beats occupied by permanent beat officers, which angered the beat officers he bumped; and
-11/06, denying him overtime work.

[Complaint at ¶¶ 21(a)-(k).]  Plaintiffs argue that these acts also form the basis of Plaintiff Fontanilla's IIED claim.

## I.   Defendant's Motion

Defendant moves for summary judgment on all of Plaintiff Fontanilla's claims.

### A.   Retaliation

#### 1.   Time Barred Claims

Plaintiff Fontanilla filed his Charge of Discrimination with the EEOC and HCRC on March 28, 2006.  [Def.'s Separate and Concise Statement of Facts in Supp. of Its Motion for Summary Judgment Against Christopher Fontanilla ("Def.'s CSOF"), Exh. D to Decl. of Tracy S. Fukui.]  Defendant argues that Plaintiff

4

Fontanilla's Title VII retaliation claims based on actions that occurred more than 300 days before he filed his Charge are time barred.[2]  Defendant also argues that Fontanilla's state law retaliation claims are time barred if they occurred more than 180 days before he filed his charge.  Defendant argues that it is entitled to summary judgment as to the alleged retaliatory acts occurring from October 24, 2004 to June 2005 because they are time barred under both Title VII and Haw. Rev. Stat. § 378-2.[3]

### 2.  Prima Facie Case

As to Plaintiff Fontanilla's retaliation claims that are not time barred, Defendant argues that it is entitled to summary judgment because Plaintiffs have not established a prima facie case.

First, Defendant argues that being interrogated by IA detectives about Plaintiff Wong's 911 case, not hearing his complaint that the IA detective tampered with evidence tapes, and being transferred to beats with permanent beat officers are not

---

[2] Defendant states that Plaintiff Fontanilla filed his Charge of Discrimination on March 31, 2006, and 300 days before that is June 4, 2005.  [Mem. in Supp. of Fontanilla Motion at 12.]  March 31, 2006, however, is the date of the EEOC's Notice of Charge of Discrimination.  The Charge itself was received by the EEOC on March 28, 2006, and 300 days before that is June 1, 2005.

[3] The Court notes that, according to a different portion of the Complaint, the ARB hearing regarding sexual harassment allegations against Plaintiffs occurred on June 7, 2005. [Complaint at ¶ 16(I).] Plaintiff Fontanilla filed his Charge within 300 days of that date.

adverse employment actions.  Plaintiffs have not established that
Plaintiff Fontanilla was injured or harmed by these actions or
that they materially affected the terms of his employment.
Submitting to an interview as part of an IA investigation is part
of his job.

Second, Plaintiffs have not established a causal link
between Plaintiff Fontanilla's protected conduct and the adverse
employment actions.  They have offered no evidence to show that
the decision makers knew that he had engaged in protected
activity.  Temporal proximity alone is not enough.

Third, Defendant had legitimate, non-retaliatory
reasons for the actions taken against Plaintiff Fontanilla.  As
to Plaintiff Fontanilla's interrogation on October 24, 2004,
Plaintiff Wong was the subject of a criminal investigation for
falsely reporting a crime.  Defendant has a duty to investigate
crime and questioning Plaintiff Fontanilla in the course of that
investigation is a legitimate employment action.  As to the other
alleged retaliatory acts relating to the sexual harassment
complaint against Plaintiff Wong and Plaintiff Fontanilla,
several officers complained to Lieutenant Hite of inappropriate
sexual conduct by Plaintiff Wong and Plaintiff Fontanilla.
Officers Darren Nihei, Joseph Kim, and Prudencio Dela Cruz
complained to Lieutenant Hite that Plaintiff Wong and Plaintiff
Fontanilla flirted, hugged, and "play[ed] footsies" with each

other while on-duty and in uniform.  Lieutenant Hite also
received reports that Plaintiff Wong and Plaintiff Fontanilla
were riding together in the same squad car even though they were
each assigned their own vehicle and were assigned to cover
different areas.  [Def.'s CSOF, Decl. of Lester D. Hite at ¶ 6.]
Lieutenant Hite interpreted these reports as a complaint of
sexual harassment and referred the matter for investigation and
appropriate handling.  [Id. at ¶ 7.]  Defendant therefore argues
that it had a legitimate employment reason for the actions
relating to the sexual harassment complaint against Plaintiff
Wong and Plaintiff Fontanilla.  Defendant also had a legitimate
reason to issue the written reprimand to Plaintiff Fontanilla.
Although Defendant determined that the conduct did not rise to
the level of sexual harassment, it did violate HPD standards of
conduct.  [Def.'s CSOF, Exh. B to Decl. of Tracy S. Fukui.]

As to Plaintiff Fontanilla's claim that Defendant
initiated a false assault case against him, Defendant argues that
he cannot prove that the charge was false.  On April 7, 2007, HPD
was called by Windward Mall security to respond to an argument.
[Def.'s Separate Concise Statement of Facts in Supp. of Its
Motion for Summary Judgment ("Def.'s Wong CSOF"), Decl. of
Larry Lawson, at ¶¶ 2, 3(a).]  Pierre Robinson claimed that he
was "falsed", i.e. hit on the side of the face.  [Id. at ¶ 3(b).]
He continued to be hit and eventually lost consciousness.  When

he regained consciousness, Plaintiff Fontanilla was on top of him
and was pounding his head into the floor.  Several witnesses
observed Plaintiff Wong false hit Robinson and observed Plaintiff
Fontanilla hit Robinson, who was on the ground.  Robinson
suffered contusions on his head and face and a laceration that
required six stitches.  The case was referred to the Office of
the Prosecuting Attorney.  [Id. at ¶¶ 3(b)-(e).]  The Office of
the Prosecuting Attorney charged Plaintiff Fontanilla with
assault in the third degree and the case is currently pending
trial.  [Def.'s CSOF, Exh. F to Decl. of Tracy S. Fukui.]
Pursuant to the HPD's Restriction of Police Authority ("ROPA")
policy and HPD's usual custom and practice, Plaintiff
Fontanilla's police powers were restricted after he was accused
of assault.  [Def.'s CSOF, Exh. A to Decl. of Tracy S. Fukui,
Decl. of Patrick Ah Loo.[4]]

Defendant therefore argues that it had legitimate
employment reasons for the alleged retaliatory acts against
Plaintiff Fontanilla.  Plaintiffs have the burden to prove that
the proffered reasons are pretext.  Plaintiffs have not done so,
either in Plaintiff Fontanilla's prima facie case or otherwise.

Fourth, Defendant argues that Plaintiff Fontanilla's
remaining allegations of retaliation fail to state a claim.  He

---

[4] Ah Loo's declaration refers to Plaintiff Wong, not
Plaintiff Fontanilla.

alleges that on December 15, 2005 "he again engaged in protected activity when he again testified on behalf of Plaintiff Wong at her second A.R.B. hearing[.]" [Complaint at ¶ 21(f).] Defendant acknowledges that this can be considered protected activity, but there is no evidence that such conduct constituted retaliation. Plaintiffs also allege that in November 2006, Defendant denied Plaintiff Fontanilla overtime work "and many others." [Id. at ¶ 21(k).] There is no evidence to support this claim, which is vague and nonspecific. Even if Plaintiff Fontanilla was denied overtime work, there is no evidence that it was in retaliation for reporting the harassment against Plaintiff Wong.

**B.   IIED**

Defendant argues that it is entitled to summary judgment on Plaintiff Fontanilla's IIED claim because the conduct at issue was not outrageous, atrocious, or beyond the bounds of decency. Further, there are no individual defendants in this action and Plaintiff Fontanilla's IIED claim against Defendant appears to be based on respondeat superior. Defendant acknowledges that it may be liable for IIED acts that its agents commit in the course and scope of their employment. Defendant, however, argues that, if the individual actor has qualified immunity, Defendant would not be liable. In order to overcome the individual's qualified immunity, Plaintiffs must prove malice and there is no evidence of malice here.

9

## II.  **Plaintiff Fontanilla's Opposition**

The Court first notes that Plaintiffs' counsel states that she has not had contact with Plaintiff Fontanilla since November 3, 2008.  [Pltf. Christopher Fontanilla's Concise Statement in Reply to Def.'s Concise Statement ("Fontanilla CSOF"), Decl. of Counsel at ¶ 3.]  His cellular phone has been disconnected and counsel has no other number for him.  Plaintiff Fontanilla has not responded to any of counsel's written communication in 2009.  On May 5, 2009, counsel left a message for David Hayakawa, Esq., Plaintiff Fontanilla's criminal attorney, and asked him to have Plaintiff Fontanilla call, but Plaintiff Fontanilla never called. Counsel therefore prepared Plaintiff Fontanilla's separate and concise statement without consulting him.  [Id. at ¶¶ 5-8.]

Plaintiffs recount the sexual harassment Corporal Mendoza perpetrated against Plaintiff Wong.  In addition, they state that other officers, including Joe Kim, would also make sexual comments to or in the presence of Plaintiff Wong.  [Mem. in Opp. at 4 (citing Complaint).[5]]

Plaintiffs state that, on the night before Mothers' Day

_____

[5] The Court notes that the statement attributed to Kim in Fontanilla's memorandum in opposition is attributed to Mendoza in the Complaint.  [Complaint at ¶ 8(c).]  The Complaint alleges that Mendoza sexually harassed female officers in front of other male officers, including Kim, [id. at ¶ 11,] but the Complaint does not state that Kim made sexual comments to or in the presence of Wong.

in 2004, Plaintiff Fontanilla responded to a call to the Keehi Boat Harbor regarding a truck stuck on the cement pillars. Witnesses informed him that the male driver was drunk and wanted to fight everyone.  As Plaintiff Fontanilla was obtaining this information, the truck began driving directly toward Plaintiff Fontanilla's blue and white police vehicle.  The truck finally stopped approximately eight feet from Plaintiff Fontanilla's vehicle.  Plaintiff Wong then arrived to assist Plaintiff Fontanilla and she obtained the driver's information.  A male who claimed to be the driver's uncle came and said he would take the driver to sleep it off.  The driver, however, would not leave. When Plaintiff Fontanilla tried to get him to leave, the driver assaulted him and began choking him.  Plaintiff Fontanilla apparently passed out and, when he regained consciousness, the driver was holding his head in the harbor.  Plaintiff Wong attempted to assist and Plaintiff Fontanilla finally broke free. He stumbled toward the shore, gasping and choking.  He then noticed the driver had his hands around Plaintiff Wong's neck and was holding her under water.  Plaintiff Fontanilla went back into the water to assist her and they were able to handcuff the driver.  Plaintiff Wong then instructed Plaintiff Fontanilla to get out of the water.  When he did, he began vomiting harbor water.  In the meantime, the driver broke free from the handcuffs and assaulted Plaintiff Wong again.  Eventually, two other

11

officers arrived and the driver was subdued.  Plaintiffs state
that Plaintiff Wong risked her life to assist Plaintiff
Fontanilla with the driver, who was much larger than she was.
She suffered two fractured hands, various cuts and bruises, and a
black eye.  Plaintiffs state that none of the commanders checked
on their status while they were treated at the hospital and they
were denied overtime pay for their testimony at the driver's
preliminary hearing because they were on workers compensation
leave at the time.  After they filed union grievances, they
received their overtime pay over a year later.  Plaintiffs state
that HPD investigated Plaintiff Wong for cowardliness because she
did not shoot the driver.  In contrast, Officer Kevin Arakaki, a
rookie, stood by and watched the incident from the parking lot
even after Plaintiff Fontanilla told him to assist Plaintiff
Wong.  Officer Arakaki claimed that Plaintiff Wong was beating up
the suspect and he did not want to be a part of that.  On
April 14, 2005, Plaintiff Fontanilla forwarded a memorandum to
Chief of Police Boisse Correa commending Plaintiff Wong for
saving his life.  No action was taken on his memorandum and HPD
never acknowledged Plaintiff Wong's bravery in the incident.
Plaintiff Fontanilla spoke to Major Susan Ballard about Plaintiff
Wong's heroism, but Ballard said that Plaintiff Wong was
undeserving and a troublemaker.  Ballard also said that only
Sergeant J. Avril Pedro could recommend Plaintiff Wong for an

award.   Sergeant Pedro told Plaintiff Fontanilla that he did
recommend Plaintiff Wong for an award, but Major Ballard did not
forward the recommendation to her supervisors.   Plaintiffs allege
that HPD's failure to award Plaintiff Wong a medal of valor was
retaliatory.   They cite the controversial medal of valor given to
Officer Laura Chong, who froze after a suspect shot a police
officer and fled.   Another officer used Chong's service revolver
to stop the suspect.   [Fontanilla Mem. in Opp. at 4-8 (citing
Complaint).[6]]

        Plaintiffs also recount another incident on August 8,
2004 in which Plaintiff Fontanilla met Plaintiff Wong in the
parking lot of the Kalihi Police Station to return her
prescription medications that she had left in his personal
vehicle.   Plaintiff Wong was off-duty at the time.   Lieutenant
Robert Chinen saw them and demanded to know why Plaintiff Wong
was there because she had called in sick that day.   Plaintiff
Wong tried to explain about the medications.   Lieutenant Chinen
ordered Plaintiff Fontanilla to wait for him in his office.
After waiting twenty to thirty minutes, Plaintiff Fontanilla
called Plaintiff Wong to see if Lieutenant Chinen was still in
the parking lot.   While Plaintiff Fontanilla was talking to her,
Lieutenant Chinen walked in and ordered him not to talk to her.

---

        [6] There is no discussion of the Keehi Harbor incident or its
aftermath in the Complaint.

Lieutenant Chinen told Plaintiff Fontanilla not to get involved
with Plaintiff Wong because she was an abused woman who was
looking for pity, had no business being a police officer, and was
nothing but trouble.  According to him, Plaintiff Wong was
responsible from breaking up sectors in the district.  He ordered
Plaintiff Fontanilla to write a to/from regarding Plaintiff
Wong's prescriptions.  [Id. at 8-10 (citing Complaint).]

    In September 2004, Plaintiff Fontanilla observed Corporal
Mendoza and Officers Kim, Nihei, and Dela Cruz excluding
Plaintiff Wong, refusing to cover her when she responded to
police calls, walking out of the Kalani Office when she walked
in, and saying "triangle" when they passed her.  On or about
October 3, 2004, Kim asked Plaintiff Fontanilla if he and
Plaintiff Wong were seeing each other.  Plaintiff Fontanilla said
that it was no one else's business.  Kim said that Plaintiff Wong
would sleep with Plaintiff Fontanilla and then leave him because
that is what she did to Corporal Mendoza in July 2004.
Approximately the middle of October 2004, Nihei asked Plaintiff
Fontanilla if he and Plaintiff Wong were dating.  Nihei said
Plaintiff Fontanilla should watch out because Plaintiff Wong had
slept with Corporal Mendoza and asked him to leave his wife.
When he would not, Plaintiff Wong did the same thing to Stafford.
Nihei also claimed that Plaintiff Wong's children called Corporal
Mendoza and asked him for money.  Nihei said that officers did

not trust Plaintiff Wong because she did not show up for a case, and that he did not want her on any of his cases.  Plaintiffs state that on October 6, 2004, Plaintiff Wong and Plaintiff Fontanilla were responding to an abuse case on Nihei's beat. When Nihei arrived, he yelled at Plaintiff Wong to leave because he did not need her help.  [Id. at 10-11 (citing Complaint).]

On or about the week of October 13, 2004, Plaintiff Wong told Plaintiff Fontanilla that she addressed Corporal Mendoza and Officers Kim, Nihei, and Dela Cruz in line-up about what they were doing to her and that she had reported the harassment to Lieutenant Hite.  That week, Lieutenant Hite summoned Plaintiff Fontanilla to a meeting and asked him what was going on with Plaintiff Wong, the Kalani Office, and the sector. Plaintiff Fontanilla reported the harassment and discrimination that was being directed toward Plaintiff Wong.  Plaintiffs allege that, because he engaged in this protected activity, Defendant retaliated against him.  [Id. at 11-12 (citing Complaint).]

On October 24, 2004, IA Detective Calvin Tong summoned Plaintiff Fontanilla to the interview room and played a tape recording of a female voice four times.  Each time, Plaintiff Fontanilla said he did not recognize the voice.  When Detective Tong played the recording the third and fourth time, he manipulated two tape recorders.  When Plaintiff Fontanilla again said he did not recognize the voice, Detective Tong threatened to

tell Plaintiff Wong's ex-husband that Plaintiff Fontanilla and
Plaintiff Wong were having an affair and that Plaintiff Wong's
ex-husband would kill him.  Detective Tong demanded to know
whether Plaintiff Fontanilla and Plaintiff Wong were sleeping
together.  When Plaintiff Fontanilla said it was no one else's
business, Detective Tong became irate and said Plaintiff Wong
would suffer anyway.  On or about December 24, 2004, Plaintiff
Fontanilla received a copy of Detective Tong's interrogation
tape.  Plaintiffs allege that numerous sections, including all of
Tong's treats, were deleted.  [Id. at 12-13 (citing Complaint).]
On January 8, 2006, Plaintiff Fontanilla filed a formal complaint
alleging that Detective Tong tampered with the interrogation
tapes.  Plaintiffs allege that, in retaliation for engaging in
protected activity, his complaint was not investigated.  [Id. at
15 (citing Complaint, Exh. D to Fontanilla CSOF (letter from IA
stating that complaint would not be investigated because it was
filed more than one year after the incident)).]

        Plaintiffs argue that Plaintiff Fontanilla's transfer
to ACS was retaliatory because other officers who were also under
investigation for sexual harassment were not transferred,
including Sergeant Samuel Rodrigues, Corporal Mendoza, and
Officers Kim, Nihei, and Dela Cruz.  When Plaintiff Fontanilla
began working at ACS on or about November 15, 2004, he notified
State of Hawaii Organization of Police Officers ("SHOPO")

Business Agent Russell Valpraiso about the transfer.  Valparaiso asked Major Ballard why Plaintiff Fontanilla was transferred. Major Ballard said it was because Plaintiff Fontanilla called in sick twice.  She also said that Plaintiff Fontanilla and Plaintiff Wong were never to be transferred back to District 5 - Kalihi.  Plaintiffs argue that this reason was pretext and that other officers who called in sick but did not report sexual harassment were not transferred out of the district.  On or about December 15, 2004, Plaintiff Fontanilla told Captain Raymond Ancheta that he should not have been transferred.  Ancheta said that Major Dave Kajihiro of the Human Resources Division made the decision to transfer him.  Plaintiff Fontanilla spoke to Major Kajihiro and told him that Captain Ancheta blamed him for the transfer.  According to Plaintiffs, Major Kajihiro spoke to Major Ballard and Captain Ancheta and Plaintiff Fontanilla was eventually reassigned to District 7 Hawaii Kai.  [Id. at 13-14 (citing Complaint).]

Plaintiffs allege that, after Plaintiff Fontanilla filed his EEOC and HCRC complaints, Defendant retaliated against him by removing his police powers on April 20, 2007.  He was transferred to a desk job and is losing money as a result.  [Id. at 16 (citing Complaint, Exh. G to Fontanilla's CSOF (notice of Restriction of Police Authority).]  Plaintiffs also allege that Plaintiff Fontanilla has been relocated to beats with permanent

beat officers to keep him from working with Plaintiff Wong.
Plaintiff Fontanilla does not object to being kept from working
with Plaintiff Wong, but the permanent beat officers he bumped
became angry at him and Plaintiff Wong, causing them to be
further ostracized at work.  Plaintiffs also allege that police
officers who did not file EEOC and HCRC complaints have been
given overtime work while Plaintiff Fontanilla has not been.
[Id. (citing Complaint).]

        Plaintiffs argue that Plaintiff Fontanilla engaged in
protected activity when he reported the sexual harassment of
Plaintiff Wong to Lieutenant Hite and when he filed his
retaliation claims with the EEOC and HCRC on March 28, 2006 and
April 23, 2007.  Plaintiffs allege that Plaintiff Fontanilla was
subjected to the adverse employment actions alleged in paragraphs
21(e)-(k) of the Complaint.[7]  Plaintiffs argue that causation can
be inferred because the adverse employment actions were
immediately after and in between the protected activities.

        As to his IIED claim, Plaintiff Fontanilla argues that,
if he prevails on his retaliation claim, he would also prove his
IIED claim.  Plaintiffs provide no exhibits or declarations
showing that Plaintiff Fontanilla suffered severe emotional
distress.

_____

        [7] Plaintiffs appear to have abandoned Fontanilla's claims
based on the adverse employment actions alleged in paragraphs
21(a)-(d) of the Complaint.

III. **<u>Defendant's Reply for the Fontanilla Motion</u>**

First, Defendant points out that Plaintiff Fontanilla did not provide an affidavit in support of his opposition. Defendant argues the declaration of Plaintiffs' counsel is not based on personal knowledge and cannot establish foundation for the attached exhibits.  Defendant therefore contends that Plaintiff Fontanilla has failed to raise any genuine issue of fact and the Plaintiff Fontanilla Motion should be granted in its entirety.

Second, Defendant argues that, because Plaintiff Fontanilla did not address his failure to file timely EEOC and HCRC complaints as to all of the alleged retaliatory actions, Plaintiffs have conceded this issue.  Defendant argues that the Court should grant summary judgment as to paragraphs 21(a)-(e) of the Complaint.

Plaintiff Fontanilla also failed to establish an injury or harm associated with his October 24, 2004 interrogation regarding Plaintiff Wong's alleged 911 call, the failure to investigate his complaint against Tong for tampering with the interrogation tapes, or his relocation to beats with permanent beat officers.  Defendant argues that Plaintiff Fontanilla cannot establish that these constituted adverse employment actions and therefore his claims based on paragraphs 21(a), (g), and (j) should be dismissed.

19

Defendant also argues that temporal proximity alone is not enough to establish causation.  Plaintiffs must establish that the decision maker(s) knew that Plaintiff Fontanilla engaged in the protected conduct, and Plaintiffs have failed to do so. Defendant therefore argues that Plaintiff Fontanilla's retaliation claim should be dismissed.

Further, Plaintiff Fontanilla did not address the issue of pretext and has apparently conceded the issue.  Plaintiff Fontanilla has not pointed to any evidence of pretext, in his prima facie case or otherwise.

Finally, Defendant argues that Plaintiffs have not set forth sufficient facts to support Wong's IIED claim.  Hawaii law has a high standard for IIED claims in the employment context. For example, termination alone is insufficient.  There must be something outrageous about the manner or process by which the plaintiff was terminated.  Defendant asserts that, although IIED claims are commonly asserted in termination cases, recovery is rare.

## IV. **Motion Hearing**

At the hearing on the Motion, Plaintiffs' counsel stated that she made further attempts to contact Plaintiff Fontanilla through the attorney representing him in his pending criminal proceedings.  The attorney told Plaintiffs' counsel that he informed Plaintiff Fontanilla that he needed to contact

20

Plaintiffs' counsel.  Plaintiffs' counsel represented that there have been problems between Plaintiff Wong and Plaintiff Fontanilla, and Plaintiff Fontanilla may not want to be involved in the instant case anymore.

## STANDARD

### I.  Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See MetroPCS, Inc. v. City & County of San Francisco, 400 F.3d 715, 720 (9th Cir. 2005).  There is no genuine issue of material fact if, based on the record as a whole, a rational trier of fact could not find for the non-moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings."  W. Sunview Props., LLC v. Federman, 338 F. Supp. 2d 1106, 1114 (D. Haw. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

If the moving party meets its burden, the non-moving party must then present evidence that there is a genuine issue of

material fact for trial.   In considering a motion for summary
judgment, a court must resolve all disputed issues of fact in
favor of the non-moving party.   <u>See MetroPCS</u>, 400 F.3d at 720.
"[T]he court must draw all reasonable inferences in favor of the
nonmoving party, and it may not make credibility determinations
or weigh the evidence."   <u>Reeves v. Sanderson Plumbing Prods.,
Inc.</u>, 530 U.S. 133, 150 (2000) (citations omitted).   Further,
"[i]n ruling on a motion for summary judgment, the court must
bear in mind the actual quantum and quality of proof necessary to
support liability under the applicable law."   <u>W. Sunview</u>, 338 F.
Supp. 2d at 1114 (citation omitted).

**II.   <u>Retaliation</u>**

        Plaintiff Fontanilla's Title VII retaliation claims are
subject to the three-step burden-shifting analysis of <u>McDonnell
Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).   <u>See Davis v. Team
Elec. Co.</u>, 520 F.3d 1080, 1088-89 (9th Cir. 2008).

> The employee must first establish a prima facie
> case of discrimination.  If he does, the employer
> must articulate a legitimate, nondiscriminatory
> reason for the challenged action.  Finally, if the
> employer satisfies this burden, the employee must
> show that the "reason is pretextual 'either
> directly by persuading the court that a
> discriminatory reason more likely motivated the
> employer or indirectly by showing that the
> employer's proffered explanation is unworthy of
> credence.'"  <u>Chuang v. Univ. of Cal. Davis</u>, 225
> F.3d 1115, 1123-24 (9th Cir.2000) (quoting <u>Tex.
> Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248,
> 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

<u>Id.</u> at 1089.

                                22

"The elements of a prima facie retaliation claim are,
(1) the employee engaged in a protected activity, (2) she
suffered an adverse employment action, and (3) there was a causal
link between the protected activity and the adverse employment
action." Id. at 1093-94 (citation omitted).  The Ninth Circuit
has held that "causation can be inferred from timing alone where
an adverse employment action follows on the heels of protected
activity." Id. at 1094 (citations and quotation marks omitted).
Eighteen months, however, is long to support an inference of
causation based on timing alone.  See id. (citing Villiarimo v.
Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002)).

        Plaintiff Fontanilla's state law retaliation claims
must also be evaluated under the McDonnell Douglas analysis.  See
Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 425-26,
32 P.3d 52, 69-70 (2001) (applying McDonnell Douglas formula to
retaliation claims).

**III. IIED**

        Under Hawaii law, the elements of an IIED claim are:
"(1) that the conduct allegedly causing the harm was intentional
or reckless; (2) that the conduct was outrageous; and (3) that
the conduct caused (4) extreme emotional distress to another."
Young v. Allstate Ins. Co., 119 Haw. 403, 425, 198 P.3d 666, 688
(2008) (citations and quotation marks omitted).  Although the
tort is well-accepted, there is no clear definition of what

23

constitutes outrageous conduct.  See id.  "The Restatement simply
informs us that a defendant's conduct satisfies the element where
'the recitation of the facts to an average member of the
community would arouse his resentment against the actor, and lead
him to exclaim, "Outrageous!"'"  Id. (quoting Restatement § 46
comment d).  Based on the Restatement's other comments, the
Hawaii Supreme Court has stated that "mere insults, indignities,
threats, annoyances, petty oppressions, or other trivialities"
are not actionable.  See id. (citations and quotation marks
omitted).

### DISCUSSION

At the outset, the Court must determine whether
Defendant is entitled to summary judgment because Plaintiff
Fontanilla failed to provide an affidavit based on personal
knowledge in support of his memorandum in opposition.  Federal
Rule of Civil Procedure 56(e)(2) states:

> When a motion for summary judgment is properly
> made and supported, an opposing party may not rely
> merely on allegations or denials in its own
> pleading; rather, its response must--by affidavits
> or as otherwise provided in this rule--set out
> specific facts showing a genuine issue for trial.
> If the opposing party does not so respond, summary
> judgment should, if appropriate, be entered
> against that party.

Fed. R. Civ. P. 56(e)(2).  An affidavit submitted in opposition
to a motion for summary judgment "must be made on personal
knowledge, set out facts that would be admissible in evidence,

24

and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1).  A proper declaration is admissible and has the same effect as an affidavit.  See 28 U.S.C. § 1746.

Defendant's Motion was "properly made and supported". Defendant's Motion was timely and argues that: 1) some of Plaintiff Fontanilla's retaliation claims are time barred; 2) he cannot establish a prima facie case as to his retaliation claims which are not time barred; 3) even assuming *arguendo* that he can establish a prima facie case, Defendant has a legitimate, non-discriminatory reason for any adverse employment actions; 4) Plaintiff Fontanilla failed to raise a genuine issue of material fact as to pretext; and 5) Plaintiff failed to raise a genuine issue of material fact as to his IIED claim.  Although not required, Defendant submitted a number of declarations based upon personal knowledge.  See Fed. R. Civ. P. 56(b) ("A party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."), 56(e)(1).

Insofar as Defendant's Motion was "properly made and supported," it is Plaintiff Fontanilla's burden to -- "by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."  See Fed. R. Civ. P. 56(e)(2).  In support of his concise statement in

response to Defendant's concise statement of facts, Plaintiff
Fontanilla submitted only a declaration of counsel with nine
exhibits consisting of various documents relevant to the case.
Counsel's declaration expresses personal knowledge of her
office's recent attempts to contact Plaintiff Fontanilla and of
the authenticity of the exhibits.  It does not purport to express
personal knowledge about the events which form the basis of
Plaintiff Fontanilla's claims.

        Plaintiff Fontanilla's memorandum in opposition to
Defendant's Motion primarily cites the Complaint.  The Complaint
and the declaration of Plaintiffs' counsel, however, are not
sufficient to create a genuine issue of material fact for trial.
See Lane v. Dep't of Interior, 523 F.3d 1128, 1140 (9th Cir.
2008) ("Lane's allegations in her complaint and her attorney's
statements at oral argument are insufficient to defeat a summary
judgment motion." (citing Fed. R. Civ. P. 56(c); 56(e)(2)));
Randell v. United States, 64 F.3d 101, 109 (2d Cir. 1995)
(finding attorney's affidavit not purporting to be based on
personal knowledge inadequate to defeat a motion for summary
judgment); see also Shakur v. Schriro, 514 F.3d 878, 890 (9th
Cir. 2008) ("[c]onclusory affidavits that do not affirmatively
show personal knowledge of specific facts are insufficient"
(citation and quotation marks omitted)).

        The Court notes, however, that it can consider the

exhibits submitted with the declaration of counsel.  <u>See</u> <u>Aguilera</u>
<u>v. Cook County Police & Corrs. Merit Bd.</u>, 760 F.2d 844, 849 (7th
Cir. 1985) ("Sworn testimony is not the only basis on which
summary judgment may be granted; 'the court may consider any
material that would be admissible or usable at trial.'" (quoting
10A Wright, Miller & Kane, Federal Practice and Procedure § 2721,
at p. 40 (2d ed. 1983))).  Even if the Court does so, however,
the Court would still find that Defendant is entitled to summary
judgment.

First, at the hearing on the Motion, Plaintiffs'
counsel conceded that any incidents which occurred more than 300
days before Plaintiff Fontanilla filed his administrative
complaint is included for background purposes only.  <u>See</u> 42
U.S.C. § 2000e-5(e)(1).  Thus, Defendant is correct that
Plaintiff Fontanilla's retaliation claims based on adverse
employment actions which occurred more than 300 days prior to his
administrative complaint are time barred.

Second, as to Plaintiff Fontanilla's retaliation claims
which are not time barred, Defendant has come forward with
legitimate, non-retaliatory reasons for each adverse employment
action.  The evidence presented in this case does not present a
genuine issue of material fact as to whether Defendant's
proffered reasons are mere pretext.  This Court therefore FINDS
that Defendant is entitled to summary judgment as to all of

27

Plaintiff Fontanilla's retaliation claims.

Third, as to Plaintiff Fontanilla's IIED claims, one of the elements of a prima facie case is the plaintiff suffered extreme emotional distress.  See Young v. Allstate Ins. Co., 119 Haw. 403, 425, 198 P.3d 666, 688 (2008).  The evidence presented in this case does not present a genuine issue of material fact as to whether Plaintiff Fontanilla suffered extreme emotional distress.  This Court therefore FINDS that Plaintiff Fontanilla cannot establish a prima facie case and Defendant is entitled to summary judgment as to Plaintiff Fontanilla's IIED claim.

To the extent that this Court has found that, on the existing record, Defendant is entitled to summary judgment on all of Plaintiff Fontanilla's claims, this Court is inclined to direct the entry of final judgment in favor of Defendant.  This Court, however, is concerned about the representations that Plaintiffs' counsel made in her declaration and during the hearing on the Motion.  Plaintiff Fontanilla's extended failure to contact Plaintiffs' counsel may be an indication that he has abandoned the case.  In the alternative, they may indicate only that he does not want to work together with Plaintiff Wong and her counsel.  This Court therefore will allow Plaintiff Fontanilla an opportunity to seek reconsideration of this order pro se or with counsel, whether through current counsel or after the appearance of replacement counsel.

28

Plaintiffs' counsel represented that, although Plaintiff Fontanilla has not been responding to her written correspondence to him, none of the correspondence has been returned.  It therefore appears that Plaintiffs' counsel still has a current mailing address for Plaintiff Fontanilla.  This Court therefore DIRECTS Plaintiffs' counsel to provide this address to the Clerk's Office.  The Court Directs the Clerk's Officer to serve a copy of this order directly on Plaintiff Fontanilla at that address via certified mail, return receipt requested.  This Court will STAY the effect of this order for thirty days to allow Plaintiff Fontanilla to move for reconsideration, either with or without counsel.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion for Summary Judgment Against Christopher Fontanilla, filed on April 22, 2009, is HEREBY GRANTED.  This Order, however, shall be STAYED for thirty days.

The Court DIRECTS the Clerk's Office to serve a copy of this order, in addition to counsel of record, directly on Plaintiff Christopher Fontanilla via certified mail, return receipt requested, at his last known address.  Plaintiff Fontanilla has thirty days from the date of this order to file a motion for reconsideration.  The Court also grants Plaintiff Fontanilla leave to file the motion for reconsideration pro se,

29

if necessary.   If Plaintiff does not file a motion for
reconsideration within thirty days, this order shall take effect
and the Clerk's Office shall enter judgment in favor of Defendant
and against Plaintiff Fontanilla on all of Plaintiff Fontanilla's
claims.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 30, 2009.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

SHAROLYN RODRIGUES-WONG, ET AL. V. CITY & COUNTY OF HONOLULU,
HONOLULU POLICE DEPARTMENT; CIVIL NO. 08-00520 LEK; ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST
CHRISTOPHER FONTANILLA

30