IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SHAROLYN RODRIGUES-WONG AND  )   CIVIL NO. 08-00520 LEK
CHRISTOPER FONTANILLA,        )
                             )
          Plaintiffs,        )
                             )
     vs.                     )
                             )
CITY & COUNTY OF HONOLULU,    )
HONOLULU POLICE DEPARTMENT;   )
JOHN DOES 1-20; DOE ENTITIES  )
1-10,                        )
                             )
          Defendants.        )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AGAINST SHAROLYN RODRIGUES-WONG**

Before the Court is Defendant City and County of
Honolulu, Honolulu Police Department's ("Defendant" or "HPD")
Motion for Summary Judgment Against Sharolyn Rodrigues-Wong,
filed on April 22, 2009 ("Motion"). Plaintiff Sharolyn
Rodrigues-Wong ("Plaintiff", or "Wong") filed her memorandum in
opposition on May 14, 2009. Defendant filed its reply on May 21,
2009. This matter came on for hearing on June 1, 2009.
Appearing on behalf of Defendant was Tracy Fukui, Esq., and
appearing on behalf of Plaintiff was Venetia Carpenter-Asui, Esq.
After careful consideration of the Motion, supporting and
opposing memoranda, and the relevant legal authority, Defendant's
Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the
reasons set forth below.

## BACKGROUND

Plaintiff and Christopher Fontanilla ("Fontanilla", and collectively with Wong, "Plaintiffs") filed their Complaint in the instant action on November 19, 2008.[1]  The Complaint alleges a state and federal retaliation claim and an intentional infliction of emotional distress ("IIED") claim on behalf of both Plaintiffs, and a state and federal gender discrimination claim on behalf of Plaintiff.  The Complaint alleges that, or about August 2003, Corporal Albert Mendoza began sexually harassing Plaintiff in the HPD Kalani office, in public, and during line-up at the Kalihi Police Station, and out in the field.  Corporal Mendoza allegedly harassed Plaintiff each day they worked together.  She objected to the harassment and tried to ignore it. She initially did not file a complaint because she feared retaliation by Corporal Mendoza, her superior officer, and being ostracized by other male officers.  Corporal Mendoza also allegedly harassed female Police Officer Christine Thomas and other female officers.  On or about August 2003, Thomas made a sexual harassment complaint against Corporal Mendoza to Sergeant J. Averil Pedro.  [Complaint ¶¶ 8-12.]

On or about October 13, 2004, Plaintiff reported

---

[1] Plaintiffs and others originally filed this action on February 13, 2006.  The case was trifurcated on November 3, 2008. Summary judgment against Fontanilla was granted in favor of Defendant on July 30, 2009.

Corporal Mendoza's sexual harassment and retaliation.  [Id. ¶

15.]  Plaintiff alleges that, as a result of this report of

sexual harassment and retaliation, Defendant engaged in a myriad

of retaliatory acts against Plaintiff, beginning on October 21,

2004:

> -10/21/04, Lieutenant Hite initiated a sexual
> harassment case against her;
> -10/26/04, initiated an Internal Affairs ("IA")
> investigation against her for calling 911 in July
> 2004;
> -11/9/04, removed her police powers by taking her
> police I.D. card, gun, ammunition and badge;
> -11/9/04, reassigned her to a clerical job in the
> District I Evidence Room, causing her to lose
> overtime, court time, special duty, night
> differential, and hazard pay;
> -11/10/04, banned her from the District 5 weight
> room;
> -1/05, interrogated her as a suspect in a sexual
> harassment case;
> -4/21/05, subjected her to an Administrative Review
> Board ("ARB") hearing for allegedly calling 911 in
> July 2004;
> -4/22/05, subjected her to re-interrogation by IA
> regarding the alleged 911 call in July 2004;
> -6/7/05, subjected her to an ARB hearing for the
> alleged sexual harassment claim against her;
> -04, denied her a transfer back to District 5
> Kalihi;
> -8/11/05, subjected her to a second ARB hearing for
> the 911 call made in July 2004;
> -8/25/05, notified her of her "pending discharge";
> -2/28/06, issued her a written reprimand for the
> alleged sexual harassment claim against despite
> acknowledging that the City's EEO officer
> determined that there was insufficient evidence to
> substantiate allegations of sexual harassment;
> -4/10/07, initiated a false complaint against her;
> -3/2/07, falsely accused her of abusing sick leave;
> -11/10/06, issued her a written reprimand for
> having a sticker on her vehicle;
> -6/17/06, transferred her from Kailua to Kahuku;
> and

-telling her co-workers to "watch out for her and not to trust her."

[Id. ¶ 16.]

The Complaint alleges that Plaintiff filed several complaints to the Equal Employment Opportunities Commission ("EEOC").  She received a right to sue letter and filed a timely lawsuit.  [Id. ¶ 22.]

I.  **HPD's Motion**

A.  **Disparate Treatment Sex Discrimination**

HPD first argues that it is entitled to summary judgment as to Plaintiff's federal and state law hostile work environment sexual harassment claims.[2]

1.  **Time Barred Incidents**

HPD next argues that it is entitled to summary judgment as to Plaintiff's federal and state law disparate treatment sex discrimination claim.  Plaintiff filed her Charge of Discrimination with the EEOC and the Hawaii Civil Rights Commission ("HCRC") on December 5, 2005.  [Exh. I to Plaintiff's Concise Statement in Reply to Defendant's Concise Statement ("Plaintiff's CSOF").]  HPD argues that claims based on any discrete acts of alleged discrimination which took place more

---

[2] HPD's arguments on this issue are not summarized here because Plaintiff states in her memorandum in opposition to the Motion that there is no sexual harassment claim in this case. [Mem. in Opp. at 29.]

than 300 days prior to December 5, 2005, *i.e.* before February 8, 2005, are time barred pursuant to 42 U.S.C. § 2000e-5(e)(1). Thus, the alleged retaliation alleged in paragraph 16(a) (occurring on October 21, 2004) to paragraph 16(f) (occurring in early January 2005) of the Complaint are time barred.  Similarly, under state law, Plaintiff knew or should have known about the disparate treatment discrimination claims that arose from these incidents and therefore her failure to file a timely Charge of Discrimination as to these incidents is fatal.

### 2.  **Prima Facie Case**

Even assuming, *arguendo*, that the alleged disparate treatment before February 8, 2005 was not time barred, Plaintiff fails to state a prima facie case of disparate treatment discrimination as to any of her allegations.  HPD argues that Plaintiff cannot establish that she was treated differently than other similarly situated individuals.  Further, almost all of the alleged discriminatory acts do not constitute adverse employment actions.

### a.  **Removal of Police Powers & Reassignment**

HPD concedes that Plaintiff's allegations that on November 9, 2004, her police powers were removed and she was reassigned to a clerical job in the District I Evidence Room were adverse employment actions.  [Complaint ¶¶ 16(c), (d).]  The reassignment caused her to lose overtime, court time, special

duty, night differential, and hazard pay.  During her deposition,
however, Plaintiff testified that she had to give up her gun in
July 2004 because a woman who was having an affair with her
husband filed a restraining order against her.  As a result of
the restraining order, Plaintiff was assigned to the desk at
District V Kalihi and later assigned to the Records Division.
Rather than go the Records Division, Plaintiff took vacation
until the restraining order was lifted in October 2004.  [HPD's
Separate Concise Statement of Facts in Supp. of Its Motion for
Summary Judgment ("HPD's CSOF"), Decl. of Tracy Fukui, Exh. E at
108:6-110:5.]  When she returned to work, however, her police
powers were not returned because, she came under a criminal
investigation for having made an anonymous call to 911 and
falsely reporting a terroristic threatening incident in July 2004
(the "911 Call").  [HPD's CSOF, Decl. of Patrick Ah Loo ("Ah Loo
Decl.") ¶ 3.]  HPD's Restriction of Police Authority ("ROPA")
Policy provides that a police officer may be placed on ROPA when
he or she is under a criminal investigation.  In practice, every
time an officer is under a criminal investigation, he or she is
placed on ROPA and the Chief of Police has the discretion to
return the officer's police powers based on the resolution of the
investigation or the recommendations of other HPD officers.  The
ROPA policy, which was in effect in November 2004, is
administered in accordance with all anti-discrimination and anti-

6

retaliation laws.  [Ah Loo Decl. ¶ 4.]  Ah Loo, a Labor Relations
Specialist for the City and County of Honolulu, states that
Plaintiff was placed on ROPA when she came under criminal
investigation for the 911 Call during the pendency of the
investigation, as other officers in similar circumstances have
been.  [Id. ¶ 6.]

On or about September 28, 2004, HPD's Internal Affairs
Division ("IA") initiated an investigation of the 911 Call.  The
alleged false report is a violation HPD policy and a criminal
offense.  [HPD's CSOF, Decl. of Thomas Grossi ("Grossi Decl.") ¶
2.]  IA's investigation revealed that an anonymous female stated
that a driver on the freeway was being threatened by a male with
a gun in another vehicle.  The caller stated that the victim's
license number was JTB-059.  That license number is registered to
Fontanilla.  Wong, who was on vacation status at the time, was
driving Fontanilla's vehicle.  The 911 call originated from a
cellular phone number registered to Fontanilla.  Plaintiff listed
that number as her cellular contact number in the district.
After the freeway incident, Plaintiff initiated a terroristic
threatening case, which was ruled unfounded after investigation.
Although Plaintiff's voice was positively identified on the 911
tape, she denied making the call.  [Grossi Decl. ¶ 4.]

### b.   Ban from Weight Room

Plaintiff states that on November 10, 2004, she was

banned from the District V weight room.  [Complaint ¶ 16(e).]

Assuming, *arguendo*, that this claim is not time barred, HPD

argues that Plaintiff cannot establish a prima facie case of

discrimination as to this claim.  Plaintiff has not established

that other similarly situated officers who were no longer

assigned to District V were permitted to use the District V

weight room, as opposed to a weight room for the district to

which they were assigned.

### c.    IA Investigation and ARB Hearings

        Plaintiff alleges that she was subjected to

Administrative Review Board ("ARB") hearings and IA

interrogations regarding the 911 Call on April 21, 2005, April

22, 2005, June 7, 2005, and August 11, 2005.  [Complaint ¶¶

16(g)-(i), (k).]  HPD argues that Plaintiff has not established

that: these constitute adverse employment actions; other

similarly situated male officers were not similarly treated; or

that HPD did not have legitimate, non-discriminatory reasons for

these actions.

### d.    Notice of Pending Discharge

        Plaintiff states that on August 25, 2005, she was

notified of her pending discharge.  [Complaint ¶ 16(n).]  HPD

submitted a declaration by Dave Kajihiro who was a Major in the

HPD Human Resources Division in 2005.  He states that the IA

investigation determined that Plaintiff was the anonymous 911

caller and that her report of the terroristic threatening incident was false.  This constituted grounds for discharge from HPD, which instituted discharge proceedings against Plaintiff. Kajihiro therefore issued the Notice of Pending Discharge on August 23, 2005.  [HPD's CSOF, Decl. of Dave Kajihiro ¶¶ 2-5.]

HPD argues that Plaintiff has not presented any evidence that male officers who committed similar violations of HPD policy and Hawaii law were not similarly treated.

### e.   Reassignment to ACS

Plaintiff states that on June 20, 2005, she was discriminated against because she was reassigned to Alternative Call Services ("ACS") where she performed as a clerical worker. [Complaint ¶ 16(l).]  HPD argues that Plaintiffs have not established that male officers who had their police powers removed because they were under a similar investigation were treated more favorably.  Further, there is no evidence that Wong earned less pay or benefits while working at ACS.  Plaintiffs have not established that HPD's legitimate, non-discriminatory reasons for the reassignment, including the criminal investigations against her and the removal of her police powers pursuant to HPD policy, were pretext.

### f.   Assault Complaint

Plaintiff states that on April 10, 2007, HPD initiated a false assault complaint against her.  [Complaint ¶ 16(p).]  HPD

argues that Plaintiff cannot establish that this complaint was false.  IA investigated an April 7, 2007 assault case involving Plaintiff and Fontanilla.  HPD was called by Windward Mall security to respond to an argument.  [HPD CSOF, Decl. of Larry Lawson ¶¶ 2, 3(a).]  Pierre Robinson claimed that he was "falsed", *i.e.* hit on the side of the face.  [Id. ¶ 3(b).]  He continued to be hit and eventually lost consciousness.  When he regained consciousness, Fontanilla was on top of him and was pounding his head into the floor.  Several witnesses observed Plaintiff "false hit" Robinson and observed Fontanilla hit Robinson, who was on the ground.  Robinson suffered contusions on his head and face and a laceration that required six stitches. The case was referred to the Office of the Prosecuting Attorney. [Id. ¶¶ 3(b)-(e).]

### g.   **Abuse of Sick Leave**

Plaintiff states that on March 2, 2007, HPD falsely accused her of abusing her sick leave.  [Complaint ¶ 16(q).]  HPD states that, due to high overtime expenses in Plaintiff's district, it decided to evaluate officer sick leave usage and its relationship to higher overtime pay.  HPD identified the top 10 out of 140 officers in the district based on sick leave usage. The officers with the highest sick leave usage were sent an informal counseling letter to notify them that they should be mindful of their sick leave usage.  The letters were not a formal

counseling letter (form HPD 384), nor was it a formal reprimand
(form HPD 121).  Plaintiff was within the group of top ten
officers.  She was not alone in receiving the letter; male and
female officers alike received the letter.  The letters were sent
solely based upon sick leave utilization.  They were not based on
gender or upon whether the officer had filed a sexual harassment
complaint.  [HPD's CSOF, Decl. of Richard C. Robinson ¶¶ 4-9.]
HPD argues that the letter does not constitute an adverse
employment action because it was merely informal counseling.

### h. <u>Transfers</u>

Plaintiff alleges that, on June 17, 2006, she was
discriminatorily transferred from Kailua to Kahuku, and, on
October 5, 2006, she was discriminatorily denied a transfer.
[Complaint ¶¶ 16(s)-(t).]  HPD argues that Plaintiff has not
proven that these were adverse employment actions because there
is no indication that she lost pay or benefits or that there was
a title change between the positions.  Further, Plaintiff has not
established that similarly situated male officers were treated
more favorably.  Plaintiff therefore cannot establish a prima
facie case of discrimination as to the transfers.

### i. <u>Reprimand for Sticker on Vehicle</u>

Plaintiff states that on November 10, 2006, she was
discriminated against when she was issued a written reprimand for
having a sticker on her vehicle.  [Complaint ¶ 16(r).]  HPD

argues that Plaintiff has not established that this was an adverse employment action or that similarly situated male officers were treated more favorably.  Further, HPD was entitled to enforce its policies prohibiting stickers on police vehicles by issuing warnings to non-compliant officers.

As to all of the alleged discriminatory actions, HPD argues that it has articulated legitimate, non-discriminatory reasons for each of those actions and Plaintiff has not established that the proffered reasons were pretextual.

**B.   <u>Retaliation</u>**

HPD argues that it is entitled to summary judgment on all of Plaintiff's claim that she was retaliated against.

**1.   <u>Time Barred Incidents</u>**

The 300-day filing requirement also applies to retaliation claims.  Thus, HPD argues that any claims based on discrete acts of retaliation which occurred before February 8, 2005 are time barred.  Insofar as Plaintiff alleges hostile work environment harassment, an act contributing to the claim must fall within the filing period, *i.e.* after February 8, 2005.

Plaintiff alleges that after she reported Mendoza's harassment in early 2003, Mendoza retaliated against her by yelling at her for reporting him, falsely accusing her of having affairs with other officers, and spreading false rumors about her.  Mendoza's actions caused other male officers to resent her

12

and treat her differently when responding to calls.  [Complaint ¶
14.]  All of these actions took place before February 8, 2005.
Plaintiff also alleges that Defendant retaliated against her for
reporting sexual harassment.  Several of the alleged retaliatory
acts took place before February 8, 2005.  [Id. ¶¶ 16(a)-(f),
(j).]  HPD argues that claims based on all of these incidents are
time barred.

### 2.   **Prima Facie Case**

HPD also argues that it is entitled to summary judgment
as to Plaintiff's timely retaliation claims.  Plaintiffs have not
established that the alleged retaliatory acts were adverse
employment actions because bad-mouthing, yelling at, or mildly
reprimanding an employee are only petty slights and are not
actionable.  HPD also argues that Plaintiff cannot establish
causation.  HPD has presented evidence that the discipline
imposed on Plaintiff was in accordance with established HPD
policy, which applied to all similarly situated police officers.
Plaintiff has not established that the discipline was imposed
because of her sexual harassment complaint and she has not
established that the articulated reasons for the discipline were
pretext for retaliation.

### C.   **IIED**

HPD argues that it is entitled to summary judgment on
Plaintiff's IIED claim, which is based on the distinct acts of

discrimination and retaliation, and the hostile work environment which form the basis of her discrimination and retaliation claims.  First, any emotional distress arising out of alleged disparate treatment sex discrimination or retaliation is barred by the workers' compensation scheme.

Even if the claim is not barred by workers' compensation law, any IIED claim based on discriminatory or retaliatory personnel actions which violate a collective bargaining agreement, such as the making or denial of transfers or assignments, or disciplinary actions is preempted by section 301 of the Labor Management Relations Act.  As a police officer, Plaintiff is covered by a collective bargaining agreement ("CBA").  HPD argues that the court must analyze the terms of the CBA in order to analyze Plaintiff's emotional distress claims based on reassignments, transfers, denials of transfers, removal of policy authority, the issuance of reprimands or other counseling.  The terms of the CBA will be relevant to the determination of the reasonableness of HPD's actions.  These portions of Plaintiff's IIED claim are therefore preempted.

Finally, HPD argues that Plaintiff has not stated a prima facie case of IIED.  Plaintiff has not named any individual defendants and there is no evidence that any City officer acted with malice toward her.  Plaintiff has therefore failed to allege the type of intentionally tortious behavior required to establish

14

IIED.

## II.  **Plaintiff's Opposition**

Plaintiff recounts the alleged acts of sexual harassment that Mendoza committed and identify the other officers present during those incidents.  She also describes the retaliation that she suffered after she reported the harassment and the discrimination she suffered because she is a woman. [Mem. in Opp. at 2-16 (citing Plaintiff's CSOF, Decl. of Plaintiff Sharolyn Rodrigues-Wong ("Wong Decl.")).]

Plaintiff alleges that similarly situated male officers were treated more favorably.  On October 21, 2004, Hite filed a sexual harassment claim against Plaintiff on behalf of male officers Mendoza, Darren Nihei, Joseph Kim, and Prudencio Dela Cruz.  Hite, however, never filed a complaint on her behalf even though she had previously made an informal complaint to him of the long-standing sexual harassment, hostile work environment, and retaliation.  The complaint against her was ultimately closed for insufficient evidence.  Mendoza, Nihei, Kim, and Dela Cruz were never investigated for making a false sexual harassment claim against her.  [Mem. in Opp. at 16-17 (citing Wong Decl., Exh. C to Plaintiff's CSOF).[3]]

In November 2004, Plaintiff lost her police powers and

_____

[3] Exhibit C is only a memorandum giving Plaintiff notice of the complaint and directing her to respond.  Plaintiff did not provide a copy of the complaint or a copy of the determination.

was removed from District V, but Mendoza, Nihei, Kim, and Dela Cruz were never removed from the district although she made repeated complaints about them. [Id. at 17 (citing Wong Decl., Exh. D to Plaintiff's CSOF).[4]]

Plaintiff was investigated for making a false 911 call in 2004, but Mendoza was never investigated for making numerous drop calls to 911 in order to lure Plaintiff to meet with him while she was on duty. Further, Mendoza was never investigated for sexually harassing her in the workplace or for making defamatory statements about her that permanently damaged her work reputation and put her life in danger because she was ostracized by other officers. [Id. at 17-18 (citing Wong Decl.).] HPD also failed to investigate IA Detective Calvin Tong for tampering with evidence and intimidating a witness in Plaintiff's criminal investigation. [Id. at 18.]

Plaintiff also cites the following examples of male officers who were under various investigations but were not removed from their assignment and did not lose their police powers as Plaintiff did: Sergeant Samuel Rodriguez (2003-04, accused of sexual harassment); Officer William Badua (June 2003, under investigation for violating civil rights relating to a search warrant); Officer Calvin Miller (2002-04, under

---

[4] Exhibit D is the notice of the restriction of Plaintiff's police authority.

investigation for stalking a female civilian employee); Officer
Ronald Wesson (2003-04, under investigation for a temporary
restraining order); Officer William Lurbe (2003-04, under
investigation for harassment and reckless endangering); Sergeant
Larry Oliva (2004, under investigation for assault and sexually
harassing several female subordinate officers); Sergeant Jon
Nakashima (2004-05, under investigation for failing to submit
evidence and creating hostile work environment); Officer Matthew
Motas, Jr. (2003-04, under investigation for assault,
truthfulness, and not submitting illegal drugs as evidence, only
put on probation); Officer John Russ (2005, under investigation
for harassment); and Corporal Mendoza (2005, under investigation
for sexual harassment).  [Id. at 18-20 (citing Wong Decl.).]

Plaintiff was investigated for cowardliness for not
shooting a male suspect during an incident at the Keehi Boat
Harbor.  A male officer, Kevin Arakaki, was not investigated for
cowardliness even though he stood by and watched while Plaintiff
and Fontanilla were physically assaulted by the suspect.  [Id. at
20 (citing Wong Decl.).]

Plaintiff filed EEOC and HCRC complaints on December 5,
2005 and received right to sue letters on February 13, 2006.  HPD
was aware of the complaints and retaliated and discriminated
against her based on her gender.  Plaintiff reiterates the
incidents in paragraphs 16(p)-(u) of the Complaint.  Plaintiff

17

states that she lost money as a result of the April 10, 2007
transfer.  She also denies that males with the same or more used
sick leave than Plaintiff had were accused of abusing leave.
Plaintiff states that other male officers were not disciplined
for having stickers on their vehicles.  According to Plaintiff,
her June 17, 2006 transfer from Kailua to Kahuku was because no
male sergeants would work with her.  The transfer forced
Plaintiff to drive an additional sixty miles each day to and from
work.  Plaintiff also states that the October 5, 2006 transfer
denial was in favor of a less senior male officer and that she
had requested it as a hardship transfer.  Plaintiff alleges that
from June 17, 2006 to the present, Lieutenants Kennard Finn, Dave
Eber, and Dan Kwon created a hostile work environment at the
Kailua-Kaneohe Police Station by warning male officers to be
careful of what they said and did around Plaintiff, telling male
officers about her sexual harassment complaint and this lawsuit,
yelling at her in line-up and on the road, falsely accusing her
of failing to cover her beat partners, and denying her overtime
while giving overtime to male officers.  [Id. at 20-22 (citing
Wong Decl.).]

Plaintiff filed another EEOC and HCRC complaint in
April 2007 and received right to sue letters.

Plaintiff argues that she has established a prima facie
case that she was retaliated against.  She engaged in protected

18

activity when she reported Mendoza's sexual harassment to Pedro in November 2003 and Hite in October 2004 (collectively, "Harassment Complaints"), and when she filed her discrimination and retaliation complaints with the EEOC and HCRC in December 2005 (collectively, "EEOC Complaint").  Plaintiff alleges the following adverse employment actions as a result of the Harassment Complaints:

-4/21/05 ARB hearing re 911 call;[5]
-4/22/05 IA interview re 911 call;
-end 4/05 notification of ARB hearing for sexual harassment case against her;
-2004 refusal of her request to remain in District 5 while under investigation;
-6/9/05 notification of ARB hearing re 911 call;
-6/20/05 reassignment to ACS for clerical work;
-8/11/05 ARB hearing re 911 call;
-8/25/05 notification of pending discharge;[6]
-9/9/05, Officer John Russ informed her that on 11/10/04 while in the men's locker room on 11/10/04, Officer Toma Fitzgerald asked what he and other officers thought about the sexual harassment complaint against Plaintiff.  Russ said he disagreed with it and Fitzgerald said they needed a way to get rid of her.  Sergeant John Nakashima, who heard Plaintiff's conversation with Russ, instructed her not to repeat it.
-9/17/05, Officer Russell Maeyashiro told her that the sexual harassment claim against her was a conspiracy between Mendoza, Nihei, Kim, and Dela Cruz to get rid of her.
-2/28/06, Plaintiff was issued a written reprimand as a result of the sexual harassment

_____

[5] Exhibit E to Plaintiff's CSOF is a memorandum to Chief of Police Boisse Correa from Linda D'Aquila, IA setting forth the findings from the April 21, 2005 ARB hearing.

[6] Exhibit F to Plaintiff's CSOF is the written Notice of Pending Discharge.

> complaint against her, even though it
> acknowledged that the City's EEO officer
> determined there was insufficient evidence to
> substantiate the claim.[7]

[Mem. in Opp. at 26 (citing p. 14 ¶ dd. - p. 16 ¶ nn).[8]]

Plaintiff also alleges these adverse employment actions as a result of her EEOC Complaint in December 2005:

> -4/10/07, false assault III complaint initiated
>    against her and police powers removed,
>    leading to transfer to a desk job;[9]
> -3/2/07, falsely accused of abusing sick leave;[10]
> -11/06, investigation and issuance of HPD-384 for
>    minor infraction;
> -10/5/06, denial of hardship transfer;
> -6/17/06, transfer from Kailua to Kahuku; and
> -6/17/06 to present, hostile work environment.

[Id. at 26 (citing p. 20 ¶ a. - p.22 ¶ f.).[11]]

Plaintiff argues that these retaliatory acts occurred immediately after and in between her protected activity and therefore causation can be inferred.

As to her disparate treatment sex discrimination claim, Plaintiff argues that she is a female, and thus a protected

---

[7] Exhibit G to Plaintiff's CSOF is the Written Reprimand.

[8] The Court notes that the only support for these alleged adverse employment actions is Plaintiff's declaration.

[9] Exhibit K to Plaintiff's CSOF is the written notice of the restriction of her police authority.  The notice does not state the grounds for the restriction.

[10] Exhibit H to Plaintiff's CSOF is a memoranda regarding her sick leave usage.

[11] The primary support for these alleged adverse employment actions is Plaintiff's declaration.

person, and that she is qualified for her position.  The adverse

employment actions which support her retaliation claim also

support her discrimination claim.  Further, HPD treated similarly

situated male officers more favorably than it treated Plaintiff.

As to her IIED claim, Plaintiff argues that, if she

prevails on her retaliation and/or discrimination claim, she

would also prove her IIED claim.  Plaintiff provide no exhibits

showing that she suffered severe emotional distress, nor does

Plaintiff's declaration address this issue.

## III. <u>HPD's Reply in Support of Motion</u>

HPD argues that because Plaintiff has conceded that

there is no sexual harassment claim in this case, a portion of

Count II (the gender discrimination claim) should be dismissed.[12]

HPD also argues that, because Plaintiff did not address

the untimeliness of the discrimination and retaliation claims

before February 8, 2005, they have conceded this issue.  HPD asks

the Court to grant summary judgment as to Plaintiff's disparate

treatment claims in paragraphs 16(a)-(d), (f), and (j) of the

---

[12] Count II states, in pertinent part: "Defendant, through
its agents, subjected Plaintiff Wong to unwelcome sexual
harassment, the harassment complained of was based on sex, the
harassment complained of was sufficiently pervasive so as to
alter the conditions of employment and create an abusive working
environment; and Defendant is liable via respondeat superior."
[Complaint ¶ 28.]

Complaint,[13] and Plaintiff's retaliation claims in paragraphs 14(a)-(f) of the Complaint.

As to Plaintiff's disparate treatment claim, HPD argues that she did not raise a genuine issue of fact that she was treated less favorably than similarly situated male officers. Although Plaintiff's declaration discusses numerous incidents when male officers were treated differently, she does not have personal knowledge of the alleged acts or of any action taken against the male officers and she does not state how she acquired the information.  Her testimony would not be admissible. Further, Plaintiff was not similarly situated to the male officers she alleges were treated more favorably.  Plaintiff engaged in numerous acts of misconduct and there is no evidence that the male officers in the examples she cited had engaged in similar misconduct.  Plaintiff cites numerous male officers who were accused of sexual harassment but did not lose their police powers.  Plaintiff, however, lost her police powers because she was subject to a restraining order that prohibited her from carrying a gun.  Her police powers were not removed because she was the subject of a sexual harassment complaint.  Further, HPD

_____

[13] The incident in paragraph 16(e), banning Plaintiff from the District 5 weight room on November 10, 2004, would also be time barred under HPD's argument.  HPD argued that the claim in paragraph 14(j) is time barred, but there is no paragraph 14(j). The Court assumes that HPD meant 16(j), the 2004 denial of transfer.

had tangible evidence that Plaintiff had made a false 911 call
and had assaulted a teenager.  Plaintiff also did not present any
evidence regarding the merit of the charges against the other
male officers.

HPD also argues that Plaintiff has not presented any
evidence that HPD's legitimate, non-discriminatory reasons for
its actions against her were pretext for discrimination or
retaliation.  The Ninth Circuit has held that a plaintiff does
not have to provide additional evidence of pretext if the prima
facie case itself sets forth sufficient evidence to create a
genuine issue of fact as to pretext.  In the present case,
however, Plaintiff's prima facie case does not raise a genuine
issue of fact as to pretext.

Plaintiff has also failed to establish a causal link
between her protected conduct and the alleged retaliatory
actions.  Plaintiff only relies on temporal proximity, but that
alone will not show causation in all cases.  Further, in order to
warrant an inference of a causal link, Plaintiff must establish
that the decision maker was aware of the protected activity.
Plaintiff has not done so.

Finally, HPD argues that Plaintiff has not set forth
sufficient facts to support her IIED claim.  Hawaii law has a
high standard for IIED claims in the employment context.  For
example, termination alone is insufficient.  There must be

23

something outrageous about the manner or process by which the
plaintiff was terminated.  HPD asserts that, although IIED claims
are commonly asserted in termination cases, recovery is rare.

### DISCUSSION

## I.   Summary Judgment

Summary judgment is appropriate when "the pleadings,
the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial
burden of establishing that there is no genuine issue of material
fact.  See MetroPCS, Inc. v. City & County of San Francisco, 400
F.3d 715, 720 (9th Cir. 2005).  There is no genuine issue of
material fact if, based on the record as a whole, a rational
trier of fact could not find for the non-moving party.  See
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 587 (1986).  "A material fact is one that may affect the
decision, so that the finding of that fact is relevant and
necessary to the proceedings."  W. Sunview Props., LLC v.
Federman, 338 F. Supp. 2d 1106, 1114 (D. Haw. 2004) (citing
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

If the moving party meets its burden, the non-moving
party must then present evidence that there is a genuine issue of
material fact for trial.  In considering a motion for summary

24

judgment, a court must resolve all disputed issues of fact in favor of the non-moving party.  See MetroPCS, 400 F.3d at 720. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted).  Further, "[i]n ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law."  W. Sunview, 338 F. Supp. 2d at 1114 (citation omitted).

## II.  Time-Barred Claims

In order for a federal court to exercise subject matter jurisdiction over a plaintiff's state and federal retaliation and gender discrimination claims, the plaintiff must have exhausted his administrative remedies by filing a timely charge with the EEOC or the HCRC.  See Vasquez v. County of Los Angeles, 349 F.3d 634, 644 (9th Cir. 2003) (must file timely EEOC charge for Title VII retaliation claim) (citing 42 U.S.C. § 2000e-5(b)); B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002) ("Under Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." (citing 42 U.S.C. § 2000e-5(b)).  Title VII provides:

> in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e-5(e)(1).

The Court agrees with Defendant that any claims based on retaliation or gender discrimination that occurred prior to February 8, 2005, which is 300 days prior to the filing of Plaintiff's Charge of Discrimination with the EEOC, is time barred.  The Court also notes that Plaintiff failed to address this issue in her opposition memorandum, and at the hearing, Plaintiff's counsel indicated that incidents prior to the February 5, 2005 date were included in the Complaint as "background" facts.  Accordingly, summary judgment is granted in favor of Defendant on any Title VII retaliation or gender discrimination claims set forth in paragraphs 14(a) - (f) and 16(a) - (f), (j) of the Complaint.  Furthermore, to the extent Plaintiff has asserted additional retaliation and gender discrimination claims in its opposition memorandum which occurred prior to February 5, 2005, such claims are similarly time-barred.

## III. **Title VII and Related State Claims**

With respect to the remaining state and Title VII retaliation and gender discrimination claims that are not time

barred, such claims are subject to the three-step burden-shifting

analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792

(1973).[14]  <u>See</u> <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1088-89

(9th Cir. 2008).

> The employee must first establish a prima facie
> case of discrimination.  If he does, the employer
> must articulate a legitimate, nondiscriminatory
> reason for the challenged action.  Finally, if the
> employer satisfies this burden, the employee must
> show that the "reason is pretextual 'either
> directly by persuading the court that a
> discriminatory reason more likely motivated the
> employer or indirectly by showing that the
> employer's proffered explanation is unworthy of
> credence.'"  <u>Chuang v. Univ. of Cal. Davis</u>, 225
> F.3d 1115, 1123-24 (9th Cir.2000) (quoting <u>Tex.
> Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248,
> 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

<u>Id.</u> at 1089.

### A.   <u>Retaliation Claims</u>

"The elements of a prima facie retaliation claim are,

(1) the employee engaged in a protected activity, (2) she

suffered an adverse employment action, and (3) there was a causal

link between the protected activity and the adverse employment

action."  <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1093-94 (9th

Cir. 2008) (citation omitted).  An adverse employment action is

one that materially affects the compensation, terms, conditions,

---

[14] Plaintiff's state law retaliation and gender
discrimination claims are also evaluated under the <u>McDonnell
Douglas</u> analysis.  <u>See</u> <u>Schefke v. Reliable Collection Agency,
Ltd.</u>, 96 Haw. 408, 425-26, 32 P.3d 52, 69-70 (2001) (applying
<u>McDonnell Douglas</u> formula to retaliation claims).

or privileges of employment.  <u>Id.</u> at 1089.  "[C]ausation can be
inferred from timing alone where an adverse employment action
follows on the heels of protected activity."  <u>Id.</u> at 1094
(citations and quotation marks omitted).

It is undisputed that Plaintiff engaged in protected
activity when she made the Harassment Complaints and the EEOC
Complaint.  [Wong Decl. ¶¶ 10, 13(u), 18; HPD's CSOF, nos. 6, 8,
29.]  Therefore, the Court finds that Plaintiff has demonstrated
the first prima facie element of her retaliation claim.

### 1.  <u>Harassment Complaints</u>

Plaintiff lists a number of incidents in her
declaration that she believes were adverse employment actions in
retaliation against her for making the Harassment Complaints.[15]
[Wong Decl. ¶ 13.]  Based on the evidence submitted, the Court
finds that the Plaintiff has made a prima facie showing that the
following incidents materially affected the terms or conditions
of her employment and, for purposes of this Motion, constitute
adverse employment actions: (1) the ARB hearings on April 21 and
August 11, 2005 regarding the 911 Call, (2) work reassignment to
ACS on June 20, 2005, (3) Notification of Pending Discharge on
August 25, 2005, and (4) and Notice of Disciplinary Action

---

[15] Based on its finding that certain claims are time-barred,
<u>supra</u>, the Court only addresses those actions that occurred after
February 5, 2005, which are included in Plaintiff's Declaration,
paragraphs 13(dd) - (oo), submitted with her Concise Statement.

regarding a sexual harassment complaint against Plaintiff on February 28, 2006.[16]  [Id. ¶¶ 13(dd), (ii)-(kk), (nn). Therefore, Plaintiff has demonstrated the second prima facie element of her retaliation claims.

The final element of Plaintiff's prima facie claim of retaliation concerns whether Plaintiff has presented evidence sufficient to raise the inference that making the Harassment Complaints was the likely reason for such actions.  Plaintiff appears to concede that she does not have any direct evidence of causation but argues that a causal link may be inferred when the adverse employment actions occur in close time to the protected activity.  The Court agrees that causation may be inferred when the alleged retaliatory conduct "follows on the heels of protected activity", but notes that the reach of such inference has its limits.  Davis, 520 F.3d at 1094 (noting that eighteen months is too long, but one and one-half months after defendant ended its investigation is sufficient) (citations omitted).  In this case, the investigation of the facts underlying the Harassment Complaints began in January 2005 and was not completed

---

[16] The remaining incidents described in paragraph 13 of Plaintiff's Declaration do not constitute an adverse employment action as this Court finds that those notices, interviews and summary of conversations did not materially alter any term or condition of her employment.

by Defendant until June 2005.[17]  [HPD CSOF, Exh. A (Memorandum to
Chief Correa regarding Sexual Harassment Complaint).]  The date
of the last adverse employment action related to the Harassment
Complaints was on February 28, 2006.  The Court does not find the
distance between the two to be outside of the reach of a proper
causal inference and therefore finds that Plaintiff has
demonstrated the third and final prima facie element for her
retaliation claim in connection with the Harassment Complaints.

        Given Plaintiff's showing of a prima facie retaliation
claim, the Court turns next to whether Defendant had legitimate,
non-discriminatory reasons for taking the alleged adverse
actions.  Defendant contends that the actions taken were not in
response to Plaintiff's sexual harassment complaints but were
based on the following legitimate reasons: (1) the ARB hearings
were based on a valid and legitimate investigation of a 911 call
made by an anonymous female, later identified as Plaintiff,
claiming a false terroristic threatening incident, (2)
Plaintiff's police authority was restricted and she was
reassigned to ACS as a result of the 911 Call investigation, (3)
Plaintiff was issued a Notice of Pending Discharge as a result of
the investigation by IA and a determination by the ARB that

_____

[17] Although it is not clear if this investigation stemmed
from the Harassment Complaints, the facts underlying such
investigation appear to be substantially similar to the
complaints made by Plaintiff in November 2003 and October 2004.

determined Plaintiff made the anonymous 911 call and false

terroristic threatening charge, and (4) Plaintiff's Notice of

Disciplinary Action was based on a valid sexual harassment claim

made against her.  [HPD CSOF, Declarations of Lester Hite,

Patrick Ah Loo, Thomas Grossi and Dave Kajihiro.]  The Court

finds that Defendant has offered legitimate, non-discriminatory

reasons for taking the adverse actions against Plaintiff.

Even if Defendant's reasons for acting adversely

against Plaintiff are legitimate and non-discriminatory,

Plaintiff may nevertheless prevail on her retaliation claim if

she can demonstrate that those reasons are simply a pre-text for

discrimination.  Moreover, in order to survive a summary judgment

motion, Plaintiff need not present evidence "beyond that

constituting [her] prima facie case, if that evidence raises a

genuine issue of material fact regarding the truth of the

employer's proffered reasons."  Chuang v. University of

California Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir.

2000).  In her opposition memorandum, Plaintiff offers no

argument asserting that the reasons given by Defendant are a pre-

text.  The Court notes, however, that in her declaration,

Plaintiff cites to several conversations concerning the basis of

the sexual harassment complaint made against her.  In the first

instance, Plaintiff was informed on September 9, 2005 by Officer

Russ that he and others had a conversation back in November 10,

31

2004, wherein Officer Fitzgerald indicated that the sexual harassment complaint against her was a way get rid of her. [Wong Decl. ¶ 13(11).]  In another instance, Plaintiff was informed on September 17, 2005 by Officer Maeyashiro that the sexual harassment claim against her was a "conspiracy between Mendoza, Nihei, Kim and Del Cruz" to get rid of her. [Id. ¶ 13(mm).]  The Court, however, finds that the content of the alleged conversations are too tenuous and do not point to a pre-text for discrimination by Defendant.  For example, even if there was a conspiracy to get rid of her (presumably for making the Harassment Complaints, although it is not stated as such), the actors in such conspiracy were Mendoza and other employee officers and not Defendant, or Lieutenant Hite, the superior officer that referred the case for investigation.  Nor is the Court persuaded that a genuine issue of material fact concerning pre-text is raised by the facts underlying Plaintiff's prima facie retaliation claim.  Accordingly, summary judgment on Plaintiff's state and Title VII retaliation claim in connection with the Harassment Complaints is granted in favor of Defendant. See Davis, 520 F.3d at 1094.

## 2.   EEOC Complaint

Plaintiff also lists a number of incidents in her declaration that she believes were adverse employment actions in retaliation against her for making the EEOC Complaint.  [Wong

32

Decl. ¶ 19.]  Based on the evidence submitted, the Court finds that the Plaintiff has made a prima facie showing that the following incidents materially affected the terms or conditions of her employment and, for purposes of this Motion, constitute adverse employment actions: (1) creating a hostile work environment while stationed at the Kaneohe-Kailua Police Station from June 17, 2006, and (2) initiating an assault III complaint against Plaintiff on April 10, 2007.[18]  [Id. ¶¶ 19(a), (e).] Therefore, Plaintiff has demonstrated the second prima facie element of her retaliation claims as it relates to the EEOC Complaint.

Plaintiff, however, fails to demonstrate that there is a causal link between the EEOC Complaint and the assault III complaint made against her on April 10, 2007.  Plaintiff attempts to stand again on the argument that the EEOC Complaint is in temporal proximity to such adverse employment action.  This Court is not persuaded and finds that fourteen months is too far away to infer causation between the protected activity and the alleged

---

[18] Regarding the remaining alleged adverse actions contained in paragraph 19 of Plaintiff's Declaration, the Court finds that Plaintiff has failed to meet her burden of establishing that those actions, even if true, materially affected the terms and conditions of her employment.  The Court notes that with respect to the allegations Plaintiff was denied a hardship transfer on October 5, 2006, and was transferred from the Kailua Police Station to the Kahuku Station on June 17, 2006, Plaintiff does not demonstrate how those actions materially affected the compensation, terms, conditions, or privileges of employment.

unlawful activity.  <u>See</u> <u>Davis</u>, 520 F.3d at 1094.  Without more,
this Court finds that Plaintiff has not shown a causal connection
between the two.  The proximity of time between the EEOC
Complaint and the hostile work environment allegedly created by
Defendant on or about June 17, 2006 also presents a long period;
however, for purposes of this Motion, the Court finds that such
time-frame is sufficient to infer a causal connection.
Therefore, Plaintiff has demonstrated the third element of her
prima facie claim for retaliation concerning the EEOC Complaint.

     Defendant does not proffer any legitimate, non-
discriminatory basis for allegedly creating a hostile work
environment with respect to Plaintiff and therefore the Court
denies summary judgment on this claim.

    B.   **<u>Sex Discrimination Claims</u>**

     In order to establish a prima facie case of sex
discrimination, a plaintiff must show that:

> (1) she belongs to a protected class; (2) she was
> qualified for her position; (3) she was subject to
> an adverse employment action; and (4) similarly
> situated individuals outside her protected class
> were treated more favorably.  The requisite degree
> of proof necessary to establish a *prima facie* case
> for Title VII . . . claims on summary judgment is
> minimal and does not even need to rise to the
> level of a preponderance of the evidence.

<u>Davis</u>, 520 F.3d at 1089 (citations and quotation marks omitted)
(alteration in original).

     The parties do not dispute that Plaintiff belongs to

protected class or that she was qualified for her position with HPD.  Thus, the analysis turns to whether Plaintiff suffered adverse employment actions and whether Plaintiff was treated differently and less favorably than similarly situated male employees.  To the extent Plaintiff can demonstrate those two elements, Defendant can still prevail on summary judgment if it offers a legitimate, non-discriminatory reason for the actions and Plaintiff is unable to persuade the Court that the proffered reasons are a pre-text for discrimination.

Here, Plaintiff asserts that the same allegations of adverse employment actions related to her retaliation claim also form the basis for her gender discrimination claim.[19]  [Mem. in Opp. at 29.]  First, with respect to the adverse employment actions related to the Harassment Complaints, this Court need not go further than its analysis above and finds that Defendant is entitled to summary judgment on any gender discrimination claims that arise from such actions.  In particular, Defendant proffered legitimate, non-discriminatory reasons for its actions that the Court found, in the light most favorable to Plaintiff, were not a pre-text for discrimination.

---

[19] The Court notes, as reflected in its analysis above, that Plaintiff grouped the alleged adverse employment actions in relation to either the Harassment Complaints or the EEOC Complaint.  For purposes of the analysis of Plaintiff's gender discrimination claim, the Court similarly views the adverse employment actions in relation to those two separate complaints.

Except for the assault III complaint made against Plaintiff on April 10, 2007, the Court finds that its analysis regarding the adverse employment actions related to the EEOC Complaint is similarly applicable, and denies summary judgment of the same (hostile work environment).  With respect to the assault III complaint, the Court finds that Defendant has proffered a legitimate, non-discriminatory reason for that action, and that Plaintiff has not made a sufficient showing, nor is a genuine issue of material fact raised by her prima facie case, that the reason given by Defendant is a pre-text for discrimination. Therefore, the Court grants summary judgment in favor of Defendant on that claim.

## V.   IIED

Under Hawaii law, the elements of an IIED claim are: "(1) that the conduct allegedly causing the harm was intentional or reckless; (2) that the conduct was outrageous; and (3) that the conduct caused (4) extreme emotional distress to another." Young v. Allstate Ins. Co., 119 Haw. 403, 425, 198 P.3d 666, 688 (2008) (citations and quotation marks omitted).  Although the tort is well-accepted, there is no clear definition of what constitutes outrageous conduct.  See id.  "The Restatement simply informs us that a defendant's conduct satisfies the element where 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead

36

him to exclaim, "Outrageous!"'" Id. (quoting Restatement § 46
comment d).  Based on the Restatement's other comments, the
Hawaii Supreme Court has stated that "mere insults, indignities,
threats, annoyances, petty oppressions, or other trivialities"
are not actionable.  See id. (citations and quotation marks
omitted).

        Plaintiff, however, has failed to make a prima facie
showing that she is entitled to relief for a claim of IIED.  She
offers no evidence in the exhibits attached to her opposition or
her declaration describing in any manner that she suffered
extreme emotional distress as a result of any alleged outrageous
conduct by Defendant.  Nor does Plaintiff even set forth any
contention, assertion or argument in her opposition memorandum,
describing or explaining the same.  The evidence presented in
this case simply does not present a genuine issue of material
fact as to whether Plaintiff suffered extreme emotional distress.
This Court therefore FINDS that Plaintiff cannot establish a
prima facie case and Defendant is entitled to summary judgment as
to Plaintiff's IIED claim.

## CONCLUSION

        On the basis of the foregoing, Defendant's Motion for
Summary Judgment Against Sharolyn Rodrigues-Wong, filed on
April 22, 2009, is HEREBY GRANTED IN PART AND DENIED IN PART.
Specifically, summary judgment is GRANTED as to Plaintiff's state

and Title VII retaliation claim in connection with the Harassment
Complaints, retaliation and gender discrimination claims as to
the assault III complaint, and the IIED claim.  Summary judgment
is DENIED as to Plaintiff's state and Title VII claim in
connection with the hostile work environment at the Kaneohe-
Kailua Police Station from June 17, 2006.  Further, a status
conference shall be held on November 23, 2009 at 9:00 a.m. to
reschedule the trial date in this action.

       IT IS SO ORDERED.

       DATED AT HONOLULU, HAWAII, November 9, 2009.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge